STATE *ex rel.* FRANKLIN *v.* SULLIVAN *et al.**

(*Nashville,* December Term, 1939.)

Opinion filed April 6, 1940.

---

*This case reprinted and annotated in 127 A. L. R., 1067.

108

Louis Zimmerman and Sam Taubenblatt, both of Memphis, for complainant.

Costen, Taylor & Crabtree, of Memphis, for defendants.

Mr. Justice McKinney delivered the opinion of the Court.

The complainant, C. O. Franklin, testamentary trustee of Martha C. D. Smithwick, referred to herein as testatrix, filed the bill in this cause on March 8, 1939, against Evelyn D. Sullivan, administratrix *cum testamento an-*

*nexo* of testatrix, and the surety on her official bond, to recover $3,150, alleged to have been lost to the estate as a result of her delay and bad faith in failing to promptly present shares of stock of the face value of $8,000 issued by the American Building and Loan Association of Memphis for payment, as authorized by section 3899 of the Code, which is as follows: "The personal representative, upon the death of a stockholder, shall be entitled to receive the full amount paid in by the deceased, and any profits which have been realized. If said stock is pledged to the company, the same shall be redeemed by said personal representative."

It is alleged in the bill that the administratrix was an officer of the Association, knew that it was in financial difficulty, and said shares of stock would have been paid in full had she presented them promptly upon her qualification; whereas, as a result of her delay, complainant, by way of compromise, accepted 70 per cent of the face value of said shares from the Association in full satisfaction of its liability.

The defenses interposed by demurrer are (1) that under the terms of the will administratrix had no authority to dispose of said shares; (2) that it is not alleged in the bill that the Association was insolvent when the claim was compromised; (3) that the claim was voluntarily compromised by complainant without in any manner binding administratrix thereby; and (4) because the bill was without equity.

The chancellor was of the opinion that complainant having voluntarily compromised the claim the administratrix was not bound thereby and could not be held responsible for the loss suffered. He, accordingly, sustained the demurrer and dismissed the bill.

The bill is deficient in that it omits a number of important dates. The date of the death of testatrix is not stated. Neither does it allege when complainant qualified as testamentary trustee, when he compromised his claim with the Association, or when the Association was placed in the hands of a receiver, nor the result of the receivership.

We think it is inferable from the record that testatrix died early in 1935. Mrs. Sullivan qualified as administratrix on March 19, 1935, and delivered these shares of stock to complainant on May 15, 1936.

In the will of testatrix T. C. Ashcroft was named executor and the Bank of Commerce and Trust Company was named trustee, but both declined to qualify.

These shares of stock in the Association were specifically bequeathed to the trustee, the number of each certificate being given in Clause 4 of the will, and they were not needed by the administratrix to pay debts. The trustee was directed to pay the annual interest received from this trust fund to the son of testatrix during his life and then to his two children.

Clause 3 of the will is as follows: "I hereby create a trust fund of twenty thousand dollars ($20,000) consisting of high grade securities (stocks and bonds) payable, principle and interest as shall be hereinafter shown in a subsequent clause of this instrument. The securities constituting this trust fund now lie in my deposit box in the Bank of Commerce and Trust Company of Memphis, Tennessee, separately wrapped and tied, with a label showing the package to be a trust fund described in detail in this, my last will and testament. These stocks and bonds have a considerable time to yet run—some nine years, some ten, and others even longer. I direct that these securities shall not be disposed of for investment

in anything else. They shall in every instance, run to full maturity. As the bonds become due, they shall be invest in six per cent paid up stock of the American Building and Loan Association of Memphis, Tennessee, and kept in these so long as the trust shall exist. And as the paid up stock of the American Building and Loan Association shall expire, it shall be renewed in the same Association so long as the trust shall exist, it being my understanding that such paid up stock may be indefinitely continued, by the appending of new coupons from time to time. All of the securities embraced in the trust fund bear 6% interest, payable on August 1st and February 1st. All of these securities, both bonds and stock, to be re-invested, as hereinbefore stated, at expiration, in paid up stocks of the American Building and Loan Association of Memphis, Tennessee.''

We quote the following from Clause 14 of the will: ''After the settlement of my few debts pertaining to last illness and death (and I desire these paid without undue delay, and at the earliest feasible moment) I request that my Executor shall go with the Trustee herein appointed, to my deposit box in the Bank of Commerce and Trust Company of Memphis; go over with him in detail, the securities specified in Clause 4, carefully check up on each, and before turning these trust securities over to the Trustee, to obtain from him a receipt for them, not merely of the total, but with each certificate specifically enumerated as to number, amount, date of maturity, and in brief as to every detail; and my Executor, when making his final settlement with the Probate Court shall file the detailed receipt with the Clerk of the Probate Court of Shelby County, Tennessee.''

It appears from the allegations of the bill that complainant, upon the receipt of said shares of stock in

May, 1936, presented them to the Association for payment, but payment was denied upon the ground that section 3899 of the Code only authorized an administrator or executor to collect such shares with accrued earnings. Thereupon complainant instituted suit against the Association, but did not ask permission of the administratrix to bring the suit in her name for his use and benefit, neither did he make the administratrix a party to that suit. The chancellor held that the statute did not authorize complainant, as trustee, to prosecute such a claim and dismissed the bill. The Court of Appeals affirmed. This court granted *certiorari*. Before the cause was heard in this court complainant voluntarily accepted a compromise of 70 cents on the dollar, as heretofore stated. The bill was amended on the hearing so as to allege that before the compromise was consummated the administratrix was requested to approve or disapprove of the same but that she remained silent, and the compromise was concluded with the assent of the Probate Court. It is not alleged that the Association was insolvent at the time this compromise agreement was entered into. In the circumstances stated we concur with the chancellor in holding that this loss cannot be charged to the administratrix. If complainant had purposed to fasten liability upon her for such loss he should have made her a party to the suit. So far as appears from this record complainant's loss resulted from his compromise rather than from any dereliction of duty on the part of the administratrix.

■ A conclusive defense to complainant's claim is an absence of authority on the part of the administratrix to convert these specific legacies of shares of stock into money. Had she made such a demand she would likely have been met with the response that since these shares

were specifically bequeathed in trust and were not needed to pay debts, this claim could be prosecuted only by the trustee.

The general rule as to specific legacies is thus stated in Sizer's Pritchard Law of Wills and Executors (2 Ed.), page 777: "The fact that a chattel is specifically bequeathed does not deprive the executor of the power to transfer or dispose of it in due course of administration, unless, by assenting to the legacy, he has parted with the title and vested it in the specific legatee. But unless the general personal assets fail, the executor commits a breach of duty by disposing of property specifically bequeathed."

From Schouler on Wills, Executors and Administrators (6 Ed.), we quote the following:

Sec. 2351. "The power of the executor to transfer on good occasion, and dispose of a chattel specifically bequeathed, though sometimes questioned, appears on the whole to be well established, as following the general rule of personal assets, for, undoubtedly, the executor's assent to the legacy, so as to divest his title in favor of a specific legatee, is readily presumed wherever the estate is ample to meet demands upon it; and unless the general personal assets fail, the executor commits a breach of duty in disposing of property bequeathed specifically instead of giving it to the legatee."

Sec. 3052. "Next to seeing that all just debts and charges are amply provided for, one who administers under a will should attend to the payment or delivery of legacies in accordance with law and the last wishes of his testator."

Sec. 3066. "The theory of our law is, that the title of a legatee, whether specific or general, does not become complete and perfect until the executor assents to the

legacy. But, as an executor's wishes are not to control those of his testator, the object of the requirement appears to be nothing more practically than to await the executor's reasonable convenience.''

Sec. 3079. ''So long as there remain assets not specifically bequeathed to appropriate to legal debts and charges against the estate, specific bequests cannot be disturbed, though general legacies be swallowed up;'' etc.

In view of the foregoing sound principles relative to the authority and duty of an executor with respect to specific bequests, and which fully recognize and give effect to the wishes of the testator without in any manner affecting the rights of creditors, we are unable to see any basis upon which it can be said that the administratrix in this cause violated her duty so as to render her liable for the loss which the estate has sustained. She literally complied with the specific duties and instructions imposed upon her in the will; she assented to the legacy and delivered the shares to the trustee.

The purpose of section 3899 of the Code was to fix liability upon building and loan associations where a stockholder dies, but it was not intended as a mandate upon an executor to convert shares of stock in such associations to money where they are specifically bequeathed and are not needed to pay debts.

The bill is without equity and its dismissal by the chancellor is affirmed.